[Cite as *Chrysler Group, L.L.C. v. Dixon*, 2017-Ohio-1161.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 104628

---

# CHRYSLER GROUP, L.L.C.

### PLAINTIFF-APPELLEE

vs.

# DARLENE DIXON

### DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-10-743352

**BEFORE:** E.T. Gallagher, J., Kilbane, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** March 30, 2017

**ATTORNEY FOR APPELLANT**

Richard O. Mazanec
Richard O. Mazanec Co., L.P.A.
1422 Euclid Avenue, Suite 500
Cleveland, Ohio 44115


**ATTORNEYS FOR APPELLEE**

Russell T. Rendall
Bruce G. Hearey
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
127 Public Square, Suite 4100
Cleveland, Ohio 44114

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Darlene Dixon ("Dixon"), appeals an order granting summary judgment in favor of plaintiff-appellee, Chrysler Group, L.L.C. She raises two assignments of error:

> 1. The trial court erred in granting Chrysler's motion for summary judgment holding that Dixon's counterclaim is barred by the doctrines of judicial and equitable estoppel and that Dixon lacks standing to bring her counterclaim.
>
> 2. The trial court erred in granting Chrysler's motion for summary judgment holding that Dixon's counterclaim fails as a matter of law because Dixon cannot prove a prima facie case of wrongful discharge based on Dixon's disability.

{¶2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶3} Dixon started her employment with Chrysler at a plant in Twinsburg, Ohio in 1997. In January 2010, Chrysler closed the Twinsburg plant, and Dixon signed a "Relocation Repayment Agreement," in which she agreed to move to Warren, Michigan to work as a production control supervisor at Chrysler's Warren Truck Assembly Plant. (Pardun Affidavit ¶ 3.) The agreement provided, in relevant part:

> I understand that the relocation benefits that have been and/or are extended by Chrysler to me or on my behalf are conditional upon my continued employment with Chrysler for a minimum of one (1) year from my effective transfer date to the new location.
>
> I understand that in the event that I am separated from Chrysler's employ for any reason other than death, layoff, or retirement within this one year period from my effective transfer date, I hereby promise to reimburse Chrysler for the relocation expenses paid to me or on my behalf for my relocation within 30 days after I have terminated my employment.

Pursuant to the agreement, Chrysler paid Dixon $41,873.95 in relocation benefits in January 2010. In February 2010, Chrysler issued a second payment to Dixon in the amount of $36,866.25 by mistake. This sum was not included in the parties' relocation agreement.

{¶4} Dixon began working at the Michigan plant on January 11, 2010. However, on January 25, 2010, Dixon went on a short-term medical leave under Chrysler's Disability Absence Plan ("DAP"). Both her physician and Chrysler's doctor approved the medical leave, and an independent medical examiner later cleared Dixon to return to work in May 2010. Accordingly, Chrysler informed Dixon that (1) she must report to work by November 2010, and (2) she must bring a certified check in the amount of $36,866.25 to repay the amount Chrysler paid to Dixon by mistake.

{¶5} Desiree Nash ("Nash"), a Human Resources Generalist at Chrysler, averred in an affidavit submitted in support of Chrysler's motion for summary judgment that "Dixon failed to report to work as instructed." (Nash Affidavit ¶ 9.) Nevertheless, Chrysler extended her report date to December 6, 2010. (Nash Affidavit ¶ 9.) Dixon reported for work on December 6, 2010, but failed to repay the $36,866.25. Accordingly, Chrysler terminated her employment. (Nash Affidavit ¶ 10.)

{¶6} Chrysler subsequently commenced this action to recover the $41,873.95 that it paid to relocate Dixon to Warren, Michigan, claiming it was entitled to reimbursement of funds paid for a job relocation that Dixon never exercised. Chrysler also sought to recover the $36,866.25 that Chrysler paid to Dixon in error. Dixon filed counterclaims

for breach of implied contract, promissory estoppel, wrongful termination based on disability, and intentional infliction of emotional distress.

{¶7} Chrysler filed a motion for summary judgment on all claims. However, before the court could rule on the motion, Dixon filed a Chapter 7 Voluntary Petition in the United States Bankruptcy Court, Northern District of Ohio. The bankruptcy petition automatically stayed this litigation in the common pleas court.

{¶8} As part of Dixon's bankruptcy proceedings, Dixon filed a schedule known as "Schedule B – Personal Property," which required her to list all personal property she owned as well as any "other contingent and unliquidated claims of every nature." Dixon listed items on the schedule according to several enumerated categories such as checking accounts, personal jewelry, and things of that nature. In response to category 21, which asked Dixon to estimate the value of "[o]ther contingent and unliquidated claims of every nature, including * * * counterclaims of the debtor," she indicated that she had "none." Dixon did not identify her counterclaims against Chrysler as a "contingent and unliquidated claim."

{¶9} In response to "Schedule F – Creditors Holding Unsecured Nonpriority Claims," Dixon identified Chrysler's claims against her as a "2010 dispute w/past employer over funds paid for relocation." She estimated the value of Chrysler's claim against her as $75,000.

{¶10} Dixon signed a declaration under penalty of perjury indicating that the information in the schedules submitted with her bankruptcy petition was true and correct.

Based on Dixon's representations, the bankruptcy court granted her petition and discharged her debts, including Chrysler's claims for repayment of both the relocation funds and the mistaken payment. Ten months after the discharge in bankruptcy, Dixon filed an "Amended Summary of Schedules" in the bankruptcy court. Dixon listed her counterclaims against Chrysler in the amended schedules. The bankruptcy court never responded to her untimely attempt to amend her bankruptcy filings after her debts had been discharged.

{¶11} Following the discharge in bankruptcy, the common pleas court lifted the stay in this case. Because the bankruptcy court had discharged Chrysler's claims against Dixon, Dixon's counterclaims were all that remained. Chrysler filed a supplement to its previously filed motion for summary judgment, arguing that Dixon's counterclaims were barred by the doctrines of judicial and equitable estoppel because she failed to timely identify her counterclaims against Chrysler as "other contingent and unliquidated claims of every nature, including * * * counterclaims of the debtor" in her schedule of personal property. Chrysler also argued Dixon lacked standing to pursue her counterclaims against Chrysler because they became part of the bankruptcy estate and only the trustee in bankruptcy had standing to bring those claims. The trial court agreed and granted Chrysler's motion for summary judgment. Dixon now appeals the trial court's judgment.

## II. Law and Analysis

### A. Standard of Review

{¶12} We review an appeal from summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996).

{¶13} Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial. Civ.R. 56(E). Summary judgment is appropriate when, after construing the evidence in a light most favorable to the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

## B.  Judicial Estoppel, Equitable Estoppel, and Standing

{¶14} In the first assignment of error, Dixon argues the trial court erred in finding (1) that her counterclaim is barred by the doctrines of equitable and judicial estoppel, and (2) that Dixon lacked standing to bring her counterclaim.

{¶15} The doctrine of judicial estoppel prevents a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324,  2007-Ohio-6442, 879 N.E.2d 174, ¶ 25. In *Reynolds v. Commr. of Internal Revenue Serv.*, 861 F.2d 469 (6th Cir.1988), the court explained:

> The purpose of the doctrine is to protect the courts "from the perversion of judicial machinery." Courts have used a variety of metaphors to describe the doctrine, characterizing it as a rule against "'playing 'fast and loose with the courts,'" "blowing hot and cold as the occasion demands," or "hav[ing] [one's] cake and eat[ing] it too."

*Id*. at 472, quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir.1982); *Scarano v. Central R.R.,* 203 F.2d 510, 513 (3d Cir.1953); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167, fn. 3 (4th Cir.1982); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1177 (D.S.C.1974), respectively. In other words, judicial estoppel preserves the integrity of the courts "'by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment.'" *Greer-Burger* at ¶ 25, quoting *Reynolds* at 472-473.

{¶16} In order to apply the doctrine of judicial estoppel, the proponent must show that his opponent "(1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court." *Id*.

{¶17} A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. 11 U.S.C.S. 521(1), 541(a)(7). A cause of action is an asset that must be scheduled under section 521(1). *See Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir.2004); *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir.2001).

{¶18} Courts have routinely held that pursuing an undisclosed cause of action creates an inconsistency sufficient to warrant application of judicial estoppel. *Eubanks* at

898; *Lewis v. Weyerhaeuser Co.*, 141 Fed.Appx. 420, 425 (6th Cir.2005). However, courts have also held that judicial estoppel should not be applied where the conduct amounts to nothing more than mistake or inadvertence. *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir.2002). In *Browning,* the court held that there are two circumstances where a debtor's failure to disclose a cause of action in a bankruptcy proceeding may be inadvertent: (1) where the debtor lacks knowledge of the factual basis of the undisclosed claims, and (2) where the debtor has no motive for concealment. *Id*. at 776.

{¶19} Motive may be inferred from knowledge. *Felix v. Dow Chemical*, S.D. Ohio No. 2:07-cv-971, 2008 U.S. Dist. LEXIS 8946, 6 (Jan. 23, 2008); *Tyler v. Fed. Express Corp.*, 420 F.Supp.2d 849, 858 (W.D.Tenn.2005), *aff'd*, 206 Fed. Appx. 500 (6th Cir.2006). Knowledge does not require "the debtor * * * know all the facts or even the legal basis for the cause of action, rather, if the debtor has enough information * * * to suggest that it may have a possible cause of action, then it is a 'known' cause of action such that it must be disclosed." *In re Costal Plains, Inc.*, 179 F.3d 197 (5th Cir.1999).

{¶20} In *Tyler*, the court held that a motive to conceal could be inferred from the fact that when the plaintiff filed her bankruptcy petition "she was aware of, yet failed to disclose, a then pending claim." *Id*. at 858. The court reasoned that "'by omitting the claims, she could keep any proceeds for herself and not have them become part of the bankruptcy estate.'" *Id*., quoting *Barger v. Cartersville*, 348 F.3d 1289, 1296 (11th Cir.2003).

{¶21} It is undisputed that Dixon knew of her counterclaims against Chrysler when she filed her bankruptcy petition because her claims against Chrysler had been pending for almost two years. Therefore, the trial court could reasonably infer that Dixon intended to conceal her counterclaims in hopes of keeping any potential proceeds to herself rather than making them part of the bankruptcy estate. The fact that her counterclaims were pending before she filed the bankruptcy petition vitiates her claim that her failure to disclose the counterclaims was nothing more than a mistake or inadvertence.

{¶22} The bankruptcy code's disclosure requirements are crucial to the effective functioning of the federal bankruptcy system. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir.1996). Indeed, the bankruptcy code's disclosure requirements are intended, in part, to protect those creditors who would be prejudiced by a debtor's failure to disclose hidden assets. *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir.1988) (Stapelton, J., dissenting). In *Rosenheim v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y.1996), the court explained:

> The rationale for * * * decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.

**{¶23}** Chrysler's claims against Dixon were discharged based on the schedule of assets Dixon submitted to the bankruptcy court under penalty of perjury. The outcome of the bankruptcy proceedings could have been different if Dixon had disclosed her counterclaims in her schedule of personal property. It is possible the trustee in bankruptcy would have litigated Dixon's counterclaims in order to recoup more assets in the estate for the benefit of creditors such that Chrysler might have recovered some portion of its claims against Dixon. For this reason, Dixon's failure to disclose her counterclaims as assets in the bankruptcy court not only warrants application of judicial estoppel, it also triggers application of equitable estoppel, which also bars subsequent attempts to prosecute undisclosed claims. *Bruck Mfg. Co. v. Mason*, 84 Ohio App.3d 398, 399, 616 N.E.2d 1168 (8th Dist.1992). The doctrine of judicial estoppel is distinct from that of equitable estoppel, in that "[j]udicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation." *Oneida Motor Freight* at 419.

**{¶24}** Dixon filed her voluntary bankruptcy petition under Chapter 7. In a Chapter 7 bankruptcy, only the trustee may litigate the debtor's claims on behalf of the bankruptcy estate. 11 U.S.C. 541(a)(1), 704(1); *Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171 (2d Cir.2007); 3 Resnick, *Collier on Bankruptcy*, Section 323.03, .03[1], 323-7 to-9 (15th Ed. Rev.2007) ("The trustee, as representative of the estate, has the exclusive capacity to sue and be sued on behalf of the estate, and is charged by law with representing the interest of the estate.").

**{¶25}** Dixon admits she did not amend her schedule of assets to include her counterclaims against Chrysler until ten months after her debts were discharged. She contends, however, that she disclosed the counterclaim to the bankruptcy trustee before the discharge of her debts as part of settlement negotiations. In an affidavit submitted in support of Dixon's brief in opposition to Chrysler's motion for summary judgment, her lawyer averred, in relevant part:

> 5. I spoke with the trustee on July 23, 2013 and discussed Darlene Dixon's counterclaim against Chrysler. I discussed the damage she was seeking, and he informed me that he would speak with Chrysler's counsel in an attempt to settle the counterclaim.
>
> 6. The trustee contacted me in late August 2013 and informed me that he had spoken to counsel for Chrysler about the counterclaim of Darlene Dixon, and he indicated that Chrysler was not interested in settling the counterclaim.

**{¶26}** However, "the duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court." *Tennyson v. Challenge Realty (In re Tennyson)*, 313 B.R. 402 (Bankr.W.D.Ky. 2004). Moreover, informal, oral disclosures are insufficient and do not substitute for the mandatory filing of formal schedules, as required by Bankruptcy Rule 1007(b). *See In re Fetner*, 218 B.R. 262 (Bankr.D.D.C. 1997) (holding that oral disclosure regarding property exemptions at a Section 341 meeting of creditors did not substitute for the mandatory disclosure under Bankruptcy Rule 1007(b)); *In re Moore*, 175 B.R. 13, 17 (Bankr.S.D.Ohio 1994) ("[T]he [bankruptcy] code does not authorize debtors, or their counsel, to simply present words on the wind at a § 341 meeting or in any other circumstance * * *.").

**{¶27}** Therefore, counsel's alleged oral disclosure to the trustee of Dixon's counterclaims against Chrysler does not prevent application of equitable or judicial estoppel. "To hold otherwise would 'suggest[ ] that a debtor should consider disclosing potential assets only if he is caught concealing them' and would 'diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.'" *Nettles v. State Farm Fire & Cas. Co.*, M.D. Ga No. 4:10-CV-106 (CDL), 2011 U.S. Dist. LEXIS 64335, (June 17, 2011), quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir.2002). *Accord De Leon v. Comcar Indus.*, 321 F.3d 1289, 1292 (11th Cir.2003).

**{¶28}** Dixon nevertheless contends she is entitled to 75 percent of the wage earnings and benefits Chrysler owed to her because she listed these claims as being exempt in her amended schedules. However, as previously stated, she filed the amended schedules after her debts were discharged and the bankruptcy court never responded to them. Therefore, because they were not disclosed prior to the discharge of her debts, they are also barred by judicial estoppel and equitable estoppel for the reasons previously explained.

**{¶29}** Furthermore, Dixon lost standing to pursue her claims against Chrysler when she filed her bankruptcy petition under Chapter 7. As previously explained, only the trustee in bankruptcy has standing to pursue the debtor's claims on the debtor's behalf because the debtor's claims are property of the bankruptcy estate. *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir.1988) ("Property of the estate that is not

abandoned * * * and that is not administered in the case remains the property of the estate."); *Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904 (6th Cir.2012) (Only the trustee, and not the debtor have standing to pursue debtor's claims that existed at the time the bankruptcy petition was filed.).

**{¶30}** Having determined that Dixon lacked standing to pursue her counterclaims against Chrysler and that her counterclaims against Chrysler were barred by the doctrines of equitable and judicial estoppel, Dixon's remaining arguments, which relate to the merits of her counterclaims are moot. The first assignment of error is overruled, and the second assignment of error is moot.

**{¶31}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE
MARY EILEEN KILBANE, P.J., and
LARRY A. JONES, SR., J., CONCUR