[Cite as *Saha v. Research Inst. at Nationwide Childrens Hosp.*, 2019-Ohio-1792.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kunal Saha, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 18AP-661 |
| | | (C.P.C. No. 11CV-14336) |
| Research Institute at | : | |
| Nationwide Children's Hospital, | | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on May 9, 2019

**On brief:** *Dagger, Johnston, Miller, Ogilvie & Hampson, LLP,* and *D. Joe Griffith,* for appellant. **Argued:** *D. Joe Griffith.*

**On brief:** *Vorys, Sater, Seymour and Pease LLP, Williams G. Porter,* and *Daniel E. Shuey,* for appellee. **Argued:** *William G. Porter.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, Kunal Saha ("Dr. Saha"), appeals from the March 28, 2016 judgment entry of the Franklin County Court of Common Pleas granting the motion for a protective order filed by defendant-appellee, Research Institute at Nationwide Children's Hospital ("the Institute"), and from the August 2, 2018 judgment entry of the Franklin County Court of Common Pleas finding judicial estoppel bars Dr. Saha's claims against the Institute. For the following reasons, we affirm the judgments of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   The present appeal is the third time this court has addressed Dr. Saha's claims arising out of his time as a jointly appointed research faculty member at the Institute and a tenure track assistant professor at the Department of Pediatrics, College of Medicine at The Ohio State University ("OSU").[1]  In *Saha v. The Ohio State Univ.*, 10th Dist. No. 10AP-1139, 2011-Ohio-3824 ("*Saha I*"), and *Saha v. Research Inst. at Nationwide Children's Hosp.*, 10th Dist. No. 12AP-590, 2013-Ohio-4203 ("*Saha II*"), we set forth the background of Dr. Saha's time with the Institute and OSU as follows:

> [At OSU,] Dr. Saha's position was that of a primary researcher.  He was placed in charge of a lab and given a support staff and post-doctoral students for his work in AIDS research.  Dr. Saha was simultaneously employed by both OSU and the Columbus Children's Hospital as a member of the Children's Research Institute ("CRI").
>
> * * *
>
> In December 2001, Dr. Saha travelled to India to lecture at an AIDS conference.  He was scheduled to return in a few weeks. Dr. Saha testified that, while in India, his lawyers petitioned the Federal Supreme Court of India to allow Dr. Saha's criminal negligence case against his deceased wife's doctors to proceed to trial. This was allowed by the court on the condition that Dr. Saha attend the trial.
>
> Dr. Saha remained in India through January and February 2002. In early March, Dr. Saha requested a leave of absence which was approved by the OSU Board of Trustees at their April 5, 2002 meeting.
>
> Dr. Saha returned to Columbus at the end of April 2002.  On May 1, 2002, Dr. Saha was informed that his CRI internal support package for his laboratory research would end June 30, 2002.
>
> * * *
>
> Dr. Saha testified that the loss of internal support reduced his lab staff from five or six to two or three with which he was unable to continue with his research at the same level as before.

*Saha I* at ¶ 4-12.  At that point:

---

[1] While OSU is not a defendant in the present action, Dr. Saha's proceedings against OSU are pertinent to this appeal.

Dr. Saha continued his laboratory work, but the reduction in financial support and resources "had a negative effect on [his] overall research progress." (R. 24, Dr. Saha's Affidavit, at 1, hereinafter "Saha Affidavit, at ___.".) After a lengthy, multi-level promotion and tenure review process, Dr. Saha was informed on September 25, 2005, that OSU would not be offering him tenure.

In July 2005, Dr. Saha filed a lawsuit against the Institute and OSU in the United States District Court for the Southern District of Ohio, Eastern Division ("[Federal] Lawsuit I"), but the court dismissed the action on October 26, 2005 for lack of subject-matter jurisdiction and failure to exhaust administrative remedies. *Saha v. The Ohio State Univ.*, S.D.Ohio No. 05-CV-675, 2005 U.S. Dist. LEXIS 44659 (Oct. 26, 2005). On March 13, 2006, Dr. Saha re-filed his suit in the United States District Court ("[Federal] Lawsuit II"), naming as defendants the Institute, OSU, and several employees from the Institute and OSU. *Saha v. The Ohio State Univ.*, S.D.Ohio No. 2:06-CV-190, 2007 U.S. Dist. LEXIS 7442 (Feb. 1, 2007). On June 28, 2006, Dr. Saha filed an amended complaint, which named additional OSU employees as defendants. Dr. Saha's amended allegations against the Institute included federal claims for breach of contract, pursuant to 42 U.S.C. 1981, violation of equal protection and due process, pursuant to 42 U.S.C. 1983, and race and national origin discrimination under Title VII, as well as state law claims for unjust enrichment, intentional infliction of emotional distress, and discrimination under R.C. 4112.99.

In its February 1, 2007 decision, the federal District Court held that Dr. Saha's federal law claims failed to state a cause of action against the Institute. Having dismissed all of Dr. Saha's federal law claims, the court declined to exercise its supplemental jurisdiction over Dr. Saha's state law claims, dismissing those claims without prejudice. The U.S. Sixth Circuit Court of Appeals affirmed the United States District Court's judgment on January 9, 2008. *Saha v. The Ohio State Univ.*, 259 Fed.Appx. 779 (6th Cir.2008).

In early 2007, Dr. Saha filed a new lawsuit * * * in the Court of Claims of Ohio against OSU and several OSU employees which set forth claims for breach of contract, discrimination, and defamation. *See Saha v. The Ohio State Univ.*, Ct of Cl. No. 2007-02050, 2010-Ohio-5906. The Court of Claims found in favor of OSU and the individual defendants.

*Saha II* at ¶ 4-7.

{¶ 3} Dr. Saha appealed the judgment of the Court of Claims of Ohio on his case against OSU. In December 2010, while his appeal of the OSU judgment was pending before this court, Dr. Saha filed for Chapter 13 bankruptcy with the assistance of attorney Michael Gunner. In his bankruptcy schedule, for "[o]ther contingent and unliquidated claims of every nature," Dr. Saha included his then-pending OSU case as a potential asset and identified the value of his interest in the claim as zero. (Pl.'s Ex. D at 1, attached to Feb. 22, 2018 Hearing Transcript.) He did not include his wrongful death lawsuit in India, which had been pending since 1998, an open malpractice claim he had against a former attorney, or potential claims against the Institute. A creditors' meeting (also called a "341 Meeting") occurred on January 19, 2011. (Tr. at 97.) Dr. Saha amended his bankruptcy schedules in January and February 2011 and did not add his wrongful death or malpractice claims or his claims against the Institute. His bankruptcy plan was confirmed on February 25, 2011.

{¶ 4} On August 4, 2011, this court in *Saha I* affirmed the Court of Claims' judgment in favor of OSU. Three month later, on November 18, 2011, Dr. Saha filed his complaint in the instant action alleging two claims for breach of contract against the Institute, including a breach of contract claim based on the 2002 termination of Dr. Saha's internal support package.[2] Dr. Saha amended his bankruptcy schedules on November 29, 2011 but did not disclose his claims against the Institute or the wrongful death or malpractice lawsuits.

{¶ 5} On December 19, 2011, the Institute filed a motion to dismiss, asserting both judicial estoppel and res judicata applied to bar Dr. Saha's claims. Dr. Saha then amended his bankruptcy petition in January 2012 to include the claims against the Institute and filed a memorandum contra the Institute's motion to dismiss on January 30, 2012. In his memorandum contra, Dr. Saha noted that "while Dr. Saha had knowledge of a potential cause of action against [the] Institute, he had no motive to conceal that cause of action as evidenced by his disclosure of his claim against [OSU] for the same damages." (Jan. 30, 2012 Memo. Contra at 9.) Dr. Saha specified that "since my claims against [OSU] were still pending, I was not sure if any claims against Nationwide Children's Hospital would be re-

---

[2] Dr. Saha later withdrew a breach of contract claim premised on alleged failure to provide 30 days' notice of termination.

filed at all as of the time of the filing of my bankruptcy." (Jan. 30, 2012 Saha Aff. at 4, attached to Memo. Contra.)

{¶ 6} On June 19, 2012, the trial court issued a decision and entry converting the Institute's motion to dismiss to a motion for summary judgment pursuant to Civ.R. 12(B). The trial court then denied the motion as to judicial estoppel but held the doctrine of res judicata applied to bar Dr. Saha's claims. Thus, the trial court granted the motion in the Institute's favor.

{¶ 7} Both parties appealed the trial court decision. In *Saha II*, we found: (1) the trial court erred in granting summary judgment in favor of the Institute based on res judicata; and (2) the trial court did not err in declining to grant summary judgment in the Institute's favor pursuant to the judicial estoppel doctrine since a genuine issue of material fact remained in dispute in regard to whether Dr. Saha's failure to disclose his claim against the Institute in his prior bankruptcy proceeding was inadvertent.

{¶ 8} On remand, the Institute moved for a protective order to limit the scope of expert discovery and evidence that could be presented at trial to exclude "speculative" evidence related to and damages arising out of OSU's multifaceted decision to deny tenure to Dr. Saha and the negative professional events occurring thereafter. (Nov. 24, 2015 Mot. at 4.) Dr. Saha filed a memorandum contra the Institute's motion for a protective order. The trial court found certain stated damages too speculative to recover and granted the Institute's motion for a limited protective order.

{¶ 9} In 2014, the malpractice lawsuit was dismissed. On June 8, 2015, Dr. Saha amended his bankruptcy schedules to disclose the India claim and his October 2013 judgment in that case awarding him $800,000. Dr. Saha was discharged in bankruptcy on December 22, 2016, and the petition was terminated on April 4, 2017.

{¶ 10} On January 26, 2018, the Institute moved to bifurcate the trial and hold a bench hearing on judicial estoppel to specifically address the issue identified by this court for remand: whether Dr. Saha's failure to list his claims against the Institute on bankruptcy filings was inadvertent. The trial court granted the motion on February 6, 2018, and a hearing on judicial estoppel was held on February 22, 2018.

{¶ 11} At the hearing, Dr. Saha testified on his own behalf and was cross-examined by the Institute. According to Dr. Saha, when the Court of Claims dismissed his claims

against the Institute due to lack of jurisdiction but retained jurisdiction over the OSU claims, he chose not to litigate both claims at the same time for financial reasons and because, while the basic claims of the two cases were different, if he prevailed over OSU he could not get those same damages against the Institute. Dr. Saha testified he did not disclose the malpractice claim since he understood the claim to be "basically nonexistent" due to lack of malpractice insurance. (Tr. at 177.) Dr. Saha agreed he signed the bankruptcy petition attesting to it being true and correct under penalty of perjury, and the petition did not include his malpractice claim, his suit in India, or claims against the Institute. Dr. Saha testified he disclosed his claims against the Institute to his attorney and said he did not read every word on the bankruptcy petitions that he signed. According to Dr. Saha, once the Institute filed a motion to dismiss in the instant action, he realized he made a mistake and amended the petition to include the claims against the Institute. Dr. Saha was "not clear" had he disclosed the claims against the Institute and had won money, that money might have been used to pay creditors. (Tr. at 59.) However, he agreed that he signed a document stating that if the lawsuit he did disclose (the OSU suit) was successful, the money may have to be used to pay creditors. Dr. Saha testified after he disclosed the lawsuit against the Institute, his bankruptcy case did not change in any way.

{¶ 12} Gunner, Dr. Saha's bankruptcy attorney, testified on behalf of the defense. Gunner testified the mandatory orientation Dr. Saha attended would have covered the disclosure of assets. According to Gunner, all potential claims are required to be disclosed in the bankruptcy schedule and, ultimately, it is the responsibility of the debtor to ensure disclosures are true and accurate. Gunner testified Dr. Saha did not disclose claims against the Institute or his malpractice lawsuit. Dr. Saha also did not disclose to him that he had a pending lawsuit in India but told Gunner "about a matter in India but he was to check with counsel or someone in India and advise [Gunner] if, in fact, there was anything there that he had to disclose on it." (Tr. at 113.) Gunner further testified if a claim arises after the petition is filed, the debtor is required to immediately disclose those claims to the bankruptcy court. According to Gunner, he was not aware Dr. Saha had filed the instant action against the Institute when the November 29, 2011 amendment (that also did not disclose the claim) was filed.

{¶ 13} Gunner testified timely disclosure of all claims in a Chapter 13 case is "very important" to evaluate whether the plan will work and result in a feasible distribution of dividend interest to the creditors and the maximum payment to creditors, particularly because the trustee in a Chapter 13 bankruptcy does not go after the assets separately. (Tr. at 91.) According to Gunner, in a Chapter 13 bankruptcy, the debtor retains possession and control of all the assets and would have to advise the trustee about claims brought over the course of the bankruptcy plan period. While a debtor in possession is required to disclose a potential claim, the claim would not automatically become part of the bankruptcy estate as the debtor can argue that it was "not an asset he owned at the time of the filing within six months." (Tr. at 133.)

{¶ 14} Gunner further testified for purposes of the bankruptcy plan, he routinely assigns "zero" to claims that have not been reduced to judgment and leaves it up to the trustee to inquire further about such claims and that to assign a positive value would be based on speculation. (Tr. at 130.) Regarding the amendment that disclosed the claim against the Institute, Gunner testified he labeled its value "unknown" since it was filed more than six months after the petition date, and he would attempt to argue it had no value to the estate. (Tr. at 134.) Had the claim against the Institute been disclosed in the original filing, Gunner would likewise have place a value of "zero, $1, unknown" and attempted to argue it was not of value to the estate. (Tr. at 134.)

{¶ 15} When asked whether the disclosure or nondisclosure of the claim would impact the dividend paid into the plan, Gunner testified "[n]ot necessarily" since if Dr. Saha ultimately recovered on the claim he could still try to argue it was not property of the bankruptcy estate. (Tr. at 135.) Gunner further testified after Dr. Saha did disclose the claims against the Institute, although the trustee could have taken action regarding the claim, the trustee in this case did not object to the amendment, and the bankruptcy plan was not changed in any way.

{¶ 16} During the hearing, Dr. Saha attempted to ask Gunner "[b]ased upon what you know about Chapter 13 bankruptcy and how you put these schedules together, would Dr. Saha have any incentive to not disclose the existence of the [Institute's] claim when he filed the claim?" (Tr. at 136.) The trial court sustained the Institute's objection, and Gunner did not answer that question. The following exchange then took place:

[DR. SAHA'S ATTORNEY]:  Well, Mr. Gunner, as Dr. Saha's bankruptcy attorney, as a matter of fact, after Dr. Saha filed the amended disclosure in January of 2012, did Dr. Saha obtain any advantages as a result of that?

[INSTITUTE'S ATTORNEY]:  Objection.

THE COURT:  Sustained.

* * *

[DR. SAHA'S ATTORNEY]:  We are going to proffer that based upon the last question and that was Dr. Saha's bankruptcy attorney as matter of fact after Dr. Saha filed the amended disclos[ur]e in January of 2012, did Dr. Saha obtain any advantage as a result of that, and we believe the answer would have been no, he obtained no advantage.

(Tr. at 137-38.)

{¶ 17} Dr. Saha's attorney then was permitted to ask whether, after disclosure of the claims against the Institute, the dividend paid into the plan changed or the plan changed in any other way.  Gunner again testified the disclosure of the claims against the Institute in January 2012 did not ultimately alter the plan.  According to Gunner, disclosure of potential claims is required whether or not the claim actually affects the bankruptcy plan, and the debtor is not free to choose whether or not to disclose a claim to the bankruptcy court based on their own assessment of whether it will be to the advantage of the estate.

{¶ 18} On August 2, 2018, the trial court issued a decision concluding judicial estoppel was necessary to preserve judicial integrity and promote full disclosure to the bankruptcy court.  In doing so, the trial court stated as findings of fact: Dr. Saha knew about the factual basis for his claim against the Institute when he filed for bankruptcy; Dr. Saha failed to disclose his claim against the Institute to the bankruptcy court despite being informed of his obligation to list all contingent and unliquidated claims, which includes potential claims and "claims of every nature"; Dr. Saha also failed to disclose two other claims to the bankruptcy court, which negates a finding of a "[l]ack of [b]ad [f]aith" and undermines Dr. Saha's credibility; Dr. Saha amended his bankruptcy filings numerous times, including after he filed the instant lawsuit, but still failed to disclose the claims; Dr. Saha received judgments in the India wrongful death lawsuit in 2011 and 2013 but failed to disclose that to the bankruptcy court; Dr. Saha knew if he disclosed his claims, any recovery might be allocated to his bankruptcy plan; Dr. Saha did not disclose the claims to his

bankruptcy lawyer; and Dr. Saha failed to take any action to apprise the bankruptcy court of his claim until after the research institute filed its motion to dismiss. (Aug. 2, 2018 Jgmt. at 3, 6.)

{¶ 19} In its conclusions of law, the trial court first noted the three elements of judicial estoppel had been met, as Dr. Saha took a contrary position under oath in a bankruptcy proceeding and that position was accepted by the bankruptcy court. The trial court then found Dr. Saha's failure to list his claim was not the result of mistake or inadvertence since Dr. Saha had knowledge of the factual basis of his claim, he had a motive to conceal his claim as a matter of law, and the "evidence fail[ed] to demonstrate a lack of bad faith." (Aug. 2, 2018 Jgmt. at 20.) Regarding Dr. Saha's motive to conceal his claim, the trial court stated:

> As an initial matter, "motive may be inferred from knowledge." *Chrysler* [*Group, L.L.C. v. Dixon*, 8th Dist. No. 104628], 2017-Ohio-1161, at ¶ 19 ("It is undisputed that Dixon knew of her counterclaims against Chrysler .... Therefore, the trial court could reasonably infer that Dixon intended to conceal her counterclaims in the hopes of keeping any potential proceeds to herself rather than making them part of the bankruptcy estate."); *see also Tyler* [*v. Fed. Express Corp.*], 420 F. Supp. 2d [849 (W.D.Tenn. 2005)] at 858 (motive established where the plaintiff "was aware of yet failed to disclose" her claim).
>
> * * * Knowledge aside, a motive to conceal claims from the bankruptcy court always exists as a matter of law, since "it is always in a Chapter 13 petitioner's interest to minimize income and assets." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 426 (6th Cir. 2005); *see also Haysbert* [*v. Ziadeh*], 2016 Ohio App. LEXIS 2889 [(June 22, 2016)], at *5-6 ("Haysbert had a motive to conceal her claim to minimize the assets available for distribution to her creditors."); *Greer-Burger v. Temesi*, 116 Ohio St. 3d 324 (2007) ("[I]t can be inferred that the failure to disclose the claim was not inadvertent because ... a motive to conceal can be inferred"); *Wallace* [*v. Johnston Coca-Cola Bottling Group, Inc.*], 2007 U.S. Dist. LEXIS 21170 [(Mar. 26, 2007)], at *6-7 ("[Plaintiff] certainly did have a motive for concealing his claims: if he had disclosed them, they would have become the property of his estate in bankruptcy, and any damages received would have been used to satisfy his debts.").

> \* \* \* Here, Plaintiff, like every bankruptcy petitioner, had a motive to minimize assets by concealing his claim against the Research Institute. In fact, the evidence demonstrates that Plaintiff was fully aware that if he disclosed his claim any recovery could be used to pay creditors.

(Aug. 2, 2018 Jgmt. at 15-16.) After also analyzing whether Dr. Saha lacked bad faith, the trial court held judicial estoppel bars Dr. Saha's claim against the Institute and dismissed the case with prejudice.

{¶ 20} Dr. Saha filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 21} Dr. Saha assigns the following as trial court error:

> [1.] The Trial Court erred in applying inferred intent to create motive on the part of Dr. Saha in applying the doctrine of judicial estoppel to bar Dr. Saha's claim against Appellee.

> [2.] The Trial Court abused its discretion in not allowing Attorney Gunner to testify as to whether or not Dr. Saha had anything to gain by not disclosing the claim against the Research Institute.

> [3.] The Trial Court abused its discretion in issuing a protective order concerning Dr. Saha's proposed evidence relating to damages.

## III. LEGAL ANALYSIS

### A. Dr. Saha's First Assignment of Error

{¶ 22} In his first assignment of error, Dr. Saha argues the trial court erred in applying inferred intent to create Dr. Saha's motive to conceal his claim under the doctrine of judicial estoppel. For the following reasons, we disagree with Dr. Saha.

{¶ 23} As we stated in *Saha II*, "[t]he judicial estoppel doctrine 'precludes a party from assuming a position in a legal proceeding inconsistent with a position taken in a prior action.' " *Id.* at ¶ 14, quoting *Advanced Analytics Laboratories, Inc. v. Kegler, Brown, Hill & Ritter, L.P.A.*, 148 Ohio App.3d 440, 2002-Ohio-3328, ¶ 37 (10th Dist.). Judicial estoppel " 'applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court.' " *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 25, quoting *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir.1998). "[J]udicial estoppel is an equitable doctrine

that a court may invoke at its discretion." *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 29.

{¶ 24} Because "[a] debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court," that debtor's subsequent pursuit of an undisclosed cause of action "creates an inconsistency sufficient to warrant application of judicial estoppel." *Chrysler Group, L.L.C. v. Dixon*, 8th Dist. No. 104628, 2017-Ohio-1161, ¶ 17, 18, citing 11 U.S.C. 521. *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 208 (5th Cir.1999) ("Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized.").

{¶ 25} Judicial estoppel applies in the bankruptcy setting where "inconsistent claims were made in bankruptcy proceedings that predated a civil action." *Greer-Burger* at ¶ 25. "A cause of action is an asset that must be scheduled" under federal bankruptcy law. *Chrysler Group* at ¶ 17. The debtor need not " 'know all the facts or even the legal basis for the cause of action, rather, if the debtor has enough information * * * to suggest that it may have a possible cause of action, then it is a "known" cause of action such that it must be disclosed.' " *Id.* at ¶ 19, citing *Coastal Plains* at 208.

{¶ 26} However, "judicial estoppel is not appropriate when a debtor's failure to disclose a claim in a prior bankruptcy proceeding is inadvertent" or due to a "mistake." *Saha II* at ¶ 16, citing *Greer-Burger* at ¶ 11. In *Saha II*, we stated "a debtor's omission is inadvertent where the debtor lacks knowledge of the factual basis of the undisclosed claims, where there is no motive for concealment, or where there is an absence of bad faith." (Internal quotations omitted.) *Id.* at ¶ 16.

{¶ 27} In this case, Dr. Saha does not dispute he was required to disclose the claims against the Institute and that each of the three elements set forth in *Greer-Burger* have been met. Instead, his assignment of error only challenges the "no motive for concealment" aspect inadvertence. *Id.*

{¶ 28} As a preliminary issue, Dr. Saha includes in the body of his analysis arguments which do not support reversal based on the particular assignment of error. Specifically, Dr. Saha mentions "bad faith" once and "good faith" twice but does not explain how bad faith supports the assignment of error before us, set forth a legally supported

argument regarding bad faith, or address the trial court's specific findings and discussion on this issue. (Appellant's Brief at 18, 23.) Likewise, Dr. Saha's arguments regarding the evidence of his subjective intent in this case demonstrating his nondisclosure was due to inadvertence only becomes relevant if we agree his assignment of error has merit and move on to assess the evidence.

{¶ 29} "This court rules on assignments of error, not mere arguments." *Huntington Natl. Bank v. Burda*, 10th Dist. No. 08AP-658, 2009-Ohio-1752, ¶ 21, quoting App.R. 12(A)(1)(b) (stating "a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs"); *Williams v. Barrick*, 10th Dist. No. 08AP-133, 2008-Ohio-4592, ¶ 28 (holding appellate courts "rule[] on assignments of error only, and will not address mere arguments"). Moreover, it is not the duty of an appellate court to create an argument on an appellant's behalf. *McKahan v. CSX Transp., Inc.*, 10th Dist. No. 09AP-376, 2009-Ohio-5359, ¶ 10. Because in his assignment of error Dr. Saha challenged only the trial court's use of inferred intent to find he had a motive to conceal his claims from the bankruptcy court, we will consider that question alone.

{¶ 30} In support of his assignment of error, Dr. Saha argues the trial court applied the wrong legal standard by using "a rubber stamped inferred or imputed analysis, which fails to take into consideration the subjective intent of Dr. Saha" and erroneously "inferr[ed] intent based upon the general and vague argument that all debtors in bankruptcy have something to gain by not disclosing a claim." (Appellant's Brief at 16, 27.) Dr. Saha cites to *AH Quin v. Cty. of Kauai Dept. of Transp.*, 733 F.3d 267 (9th Cir.2013); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3rd Cir.1996); and *Browning v. Levy*, 283 F.3d 761 (6th Cir.2012), for the proposition that a trial court errs by "us[ing] a presumption of deceit" and essentially imputing a motive to conceal claims to every bankruptcy petitioner without further inquiry, rather than considering the individual petitioner's subjective intent. (Appellant's Brief at 23.)

{¶ 31} Generally, we review a trial court's application of the equitable doctrine of judicial estoppel for an abuse of discretion. *Independence*, 2014-Ohio-4650, at ¶ 29. *See also Hoeppner v. Jess Howard Elec. Co.*, 150 Ohio App.3d 216, 2002-Ohio-6167, ¶ 44 (10th Dist.) (reviewing a lower court's application of the doctrine of equitable estoppel for abuse of discretion). However, the question of whether the trial court applied the wrong legal

standard presents a question of law, which we review de novo. *E.W. v. T.W.*, 10th Dist. No. 16AP-88, 2017-Ohio-8504, ¶ 13; *Johnson v. Ohio Fair Plan Underwriting Assn.*, 174 Ohio App.3d 218, 2007-Ohio-6505, ¶ 4 (10th Dist.).

{¶ 32} Ohio precedent permits a trial court to infer from the evidence of the case that a plaintiff's failure to disclose a claim to the bankruptcy court was not inadvertent. *Greer-Burger*, 2007-Ohio-6442, at ¶ 29 ("a motive to conceal can be inferred"); *Chrysler Group*, 2017-Ohio-1161, at ¶ 19 ("[m]otive may be inferred from knowledge"). "When reviewing potential motive, the relevant inquiry is intent at the time of non-disclosure." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 263 (5th Cir.2012), quoting *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1276 (11th Cir.2010).

{¶ 33} In this case, the trial court stated Dr. Saha, "like every bankruptcy petitioner, had a motive to minimize assets by concealing his claim" because "a motive to conceal claims from the bankruptcy court always exists as a matter of law." (Aug. 2, 2018 Jgmt. at 15.) Case law supports this position. The Sixth Circuit has repeatedly found "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets." (Internal quotations omitted.) *Lewis v. Weyerhaeuser Co.*, 141 F.Appx. 420, 426 (6th Cir.2005); *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 479 (6th Cir.2010). Furthermore, in *Greer-Burger*, the Supreme Court of Ohio inferred a plaintiff had a motive to conceal a claim on her Chapter 13 bankruptcy schedule of assets since such concealment would permit her to personally recover on the claim. *Id.* at ¶ 24.

{¶ 34} Regardless, in this case, the trial court found Dr. Saha had a motive to conceal his claims against the Institute not only because bankruptcy petitioners always have a motive to minimize assets but also because "the evidence demonstrates" such motive. (Aug. 2, 2018 Jgmt. at 15.) The trial court judgment specifically notes the evidence demonstrated Dr. Saha himself was fully aware if he disclosed his claim, any recovery could be used to pay creditors. This reference corresponds to the trial court's finding of fact Dr. Saha "acknowledged in writing in connection with his bankruptcy that any recovery in the one lawsuit he did disclose (the lawsuit against OSU) might be allocated for use in his bankruptcy plan," and, therefore, he knew disclosure of his other claims could result in recovery on those claims being allocated to the plan. (Aug. 2, 2018 Jgmt. at 8.) Dr. Saha has not challenged this finding of fact. Thus, contrary to Dr. Saha's argument in support of

his assignment of error, the trial court in this case did not simply infer Dr. Saha had a motive to conceal his claims based on a flat rule that all debtors in bankruptcy have a motive to not disclose claims. As such, the premise supporting Dr. Saha's first assignment of error is contrary to the record of the case.

{¶ 35} Considering all the above, we find the trial court did not err in applying inferred intent to find Dr. Saha had a motive to conceal his claim against the Institute. Therefore, Dr. Saha's assignment of error lacks merit.

{¶ 36} Accordingly, we overrule Dr. Saha's first assignment of error.

### B. Dr. Saha's Second Assignment of Error

{¶ 37} In his second assignment of error, Dr. Saha contends the trial court abused its discretion in not allowing Gunner to testify as to whether or not Dr. Saha had anything to gain by not disclosing the claim against the Institute. We disagree.

{¶ 38} A trial court has broad discretion over the admission or exclusion of evidence and will not be overturned absent a finding of abuse of discretion. *State v. Walker*, 10th Dist. No. 17AP-588, 2019-Ohio-1458, ¶ 42, 48. An abuse of discretion implies the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Furthermore, "error in the admission of evidence 'may be considered harmless where such [evidence] is cumulative of other, properly admitted [evidence].' " *Walker* at ¶ 67, quoting *State v. Fort*, 10th Dist. No. 15AP-704, 2016-Ohio-1242, ¶ 53.

{¶ 39} On the facts of this case, Dr. Saha has not demonstrated the trial court acted in a manner that was unreasonable, arbitrary, or unconscionable. First, it is unclear which specific question Dr. Saha is challenging the trial court's action on. Although Dr. Saha's assignment of error references pages 134 through 136 of the hearing transcript, his argument in part relies on his proffer of evidence of what Gunner would testify, which was specifically made in relation to a question on page 137 of the hearing transcript. Further complicating matters, Dr. Saha's argument on appeal does not reflect the actual proffer made at the hearing. On appeal, Dr. Saha contends he "proffered evidence that Mr. Gunner would have testified that Dr. Saha had nothing to gain" and that the trial court abused its discretion in refusing to allow Gunner to testify as to whether or not Dr. Saha had anything to gain by not disclosing the claim against the Institute. (Appellant's Brief at 30-31.) However, the proffer actually offered by Dr. Saha stated Gunner would answer Dr. Saha

"obtained no advantage" as a result of filing the January amended disclosure. (Tr. at 138.) This proffer was specifically based on a question concerning whether Dr. Saha ultimately obtained any advantage after disclosing the claim against the Institute—not Gunner's opinion on whether Dr. Saha had an incentive to not disclose the claim at issue in his earlier bankruptcy filings.

{¶ 40} Regardless, Gunner testified regarding the particular importance of a debtor's timely disclosure of potential claims in a Chapter 13 bankruptcy and that disclosure of claims may result in those claims being a part of the bankruptcy estate and impacting the plan. Gunner testified several times that after Dr. Saha did disclose the claims against the Institute, although the trustee could have taken action regarding the claim, in this case the bankruptcy plan was not changed. Dr. Saha also testified he had no incentive to conceal the claim against the Institute, and the eventual disclosure did not change the plan. In other words, whether Dr. Saha had an incentive to not disclose the claim and whether the plan was ultimately effected was repeatedly discussed at the hearing. Therefore, even had the trial court committed error in disallowing Gunner to answer these questions, such error would have been harmless. *Walker* at ¶ 67.

{¶ 41} Considering all the above, Dr. Saha has not met his burden in demonstrating the trial court abused its discretion in this matter. App.R. 16(A)(7); *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal).

{¶ 42} Accordingly, we overrule Dr. Saha's second assignment of error.

### C. Dr. Saha's Third Assignment of Error

{¶ 43} In his third assignment of error, Dr. Saha contends the trial court abused its discretion in issuing a protective order concerning Dr. Saha's proposed evidence relating to damages. We previously overruled Dr. Saha's assignments of error pertaining to the merits of the trial court's decision barring Dr. Saha's claims under the doctrine of judicial estoppel. As a result, Dr. Saha's challenge to the trial court's handing of evidence of damages is moot.

{¶ 44} Accordingly, Dr. Saha's third assignment of error is rendered moot. App.R. 12(A)(1)(c).

## IV.  CONCLUSION

{¶ 45}  Having overruled Dr. Saha's first and second assignments of error and having rendered Dr. Saha's third assignment of error moot, we affirm the judgments of the Franklin County Court of Common Pleas.

*Judgments affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____