[Cite as *In re A.R.*, 2021-Ohio-1794.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: A.R., | : | |
| (W.G., | : | No. 20AP-201 |
| | | (C.P.C. No. 18JU-8752) |
| Appellant). | : | |
| | : | (REGULAR CALENDAR) |
| | : | |
| In re: A.R., | : | No. 20AP-202 |
| | | (C.P.C. No. 18JU-8752) |
| (J.R., | : | |
| | | (REGULAR CALENDAR) |
| Appellant). | : | |

D E C I S I O N

Rendered on May 25, 2021

**On brief:** *Robert J. McClaren*, for appellee Franklin County Children Services.

**On brief:** *William T. Cramer*, for appellant W.G.

**On brief:** *Yeura Venters*, Franklin County Public Defender, and *Ian J. Jones*, for appellant J.R.

APPEALS from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

KLATT, J.

{¶ 1} Appellants, W.G. ("mother") and J.R. ("father"), appeal a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, that granted appellee, Franklin County Children Services ("FCCS"), permanent custody of A.R. For the following reasons, we affirm that judgment.

{¶ 2} Mother and father are the parents of A.R., who was born on April 9, 2012. In February 2018, FCCS received a report that A.R. had missed 52 days of school, and 50 of the 52 absences were unexcused. FCCS opened a case and assigned a caseworker to the family. The FCCS caseworker was unable to locate A.R. or either of A.R.'s parents until April 2018, when she discovered that father was hospitalized at The Ohio State University Wexner Medical Center with lung cancer. The caseworker visited father and spoke with him about A.R. Father gave the caseworker the address where he, mother, and A.R. lived. Father also admitted that mother abused crack cocaine, and that A.R. was not attending school.

{¶ 3} The caseworker then visited the family's home multiple times, but mother refused to answer the door. Mother's neighbors confirmed that mother and A.R. resided at the address, and that mother and A.R. hid when the caseworker visited. The neighbors also informed the caseworker that mother and father laid around all day abusing drugs.

{¶ 4} In April 2018, FCCS filed a neglect and dependency complaint regarding A.R. The trial court, however, dismissed that complaint because a dispositional hearing could not occur within 90 days of the filing of the complaint as required by R.C. 2151.35(B)(1). On July 26, 2018, FCCS filed the complaint in the instant action alleging that A.R. was a neglected and dependent child. A magistrate granted FCCS a temporary order of custody over A.R. on July 27, 2018.

{¶ 5} FCCS discovered that Florida had issued a warrant for mother's arrest because she had absconded while on probation for multiple felonies. At FCCS' request, officers from the Columbus Division of Police met with an FCCS caseworker at the parents' house on July 27, 2018. The police arrested mother on the outstanding warrant and the FCCS caseworker took custody of A.R.

{¶ 6} A combined adjudicatory and dispositional hearing occurred on October 24, 2018. In a judgment entry dated November 9, 2018, the trial court dismissed the two causes of action for neglect and, based on the uncontested facts set forth in remaining cause of action, adjudicated A.R. a dependent child. The trial court granted temporary custody of A.R. to FCCS, and it approved and adopted the case plan.

{¶ 7} Among other requirements, the case plan ordered mother and father to: (1) engage in a drug and alcohol assessment and follow all recommendations, and

(2) complete weekly drug screens. On June 7, 2019, FCCS moved for permanent custody of A.R., asserting that A.R. could not be placed with either parent within a reasonable time or should not be placed with either parent. In support of this assertion, FCCS alleged that neither parent had made any progress on the case plan objectives: neither parent had completed a drug and alcohol assessment; father had never completed a drug screen; mother had not completed a drug screen in over a year; and mother's one drug screen, completed on March 16, 2018, was positive for cocaine, opiates, and marijuana. FCCS also contended that the parents were not regularly visiting A.R. According to FCCS, an award of permanent custody to the agency was in A.R.'s best interest.

{¶ 8} The trial court held a hearing on FCCS' motion for permanent custody on January 23, 2020. Mother and father testified. Additionally, the FCCS caseworker assigned to the family and the guardian ad litem for A.R. also testified. The caseworker and guardian ad litem both recommended that the trial court grant FCCS permanent custody of A.R.

{¶ 9} On March 27, 2020, the trial court entered a judgment granting FCCS permanent custody of A.R. The trial court found by clear and convincing evidence that, pursuant to R.C. 2151.414(B)(1), A.R. could not be placed with either parent within a reasonable time or should not be placed with either parent, and awarding FCCS permanent custody was in A.R.'s best interest.

{¶ 10} Mother and father now appeal the March 27, 2020 judgment. Mother assigns the following error:

> The juvenile court's judgment terminating parental rights and
> granting permanent custody to the agency is against the weight
> of the evidence.

{¶ 11} Father assigns the following error:

> The trial court's granting of permanent custody (PCC) of A.R.
> to Franklin County Children Services (FCCS) was against the
> manifest weight of the evidence that PCC was in the child's best
> interest, as the best interest factors were not established by
> clear and convincing evidence.

{¶ 12} Mother's and father's assignments of error challenge the trial court's decision to grant FCCS permanent custody of A.R. An appellate court will not reverse a juvenile court's determination in a permanent custody case unless it is against the manifest weight

of the evidence. *In re Andy-Jones*, 10th Dist. No. 03AP-1167, 2004-Ohio-3312, ¶ 28. " 'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered at trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on [the evidence's] effect in inducing belief." ' " (Emphasis omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). Thus, in reviewing a judgment under the manifest weight standard, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed, and a new trial ordered. *Id.* at ¶ 20.

{¶ 13} Additionally, in conducting a manifest weight review, an appellate court must make every reasonable presumption in favor of the trial court's judgment and findings of fact. *Id.* at ¶ 21. If the evidence is susceptible to more than one construction, an appellate court must interpret it in the manner most consistent with the judgment. *Id.* Moreover, " '[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceedings and the impact the court's determination will have on the lives of the parties concerned.' " *In re H.H.*, 10th Dist. No. 19AP-158, 2019-Ohio-4953, ¶ 49, quoting *In re W.D.*, 10th Dist. No. 09AP-589, 2009-Ohio-6903, ¶ 34.

{¶ 14} To grant permanent custody of a child to a public children services agency, a juvenile court must find by clear and convincing evidence that (1) one or more of the criteria in R.C. 2151.414(B)(1)(a) through (e) applies, and (2) a grant of permanent custody is in the child's best interest. *In re A.M.*, ___ Ohio St.3d ___, 2020-Ohio-5102, ¶ 18. Thus, first, the child must meet one of the following criteria:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

> (b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)(a) through (e).

{¶ 15} Here, the trial court found A.R. met the criteria of R.C. 2151.414(B)(1)(a): she was not abandoned or orphaned, she had not been within FCCS' temporary custody for 12 out of 22 consecutive months, and she could not be placed with either parent within a reasonable time or should not be placed with either parent. In determining whether a child cannot or should not be placed with either parent, a court considers the factors listed in R.C. 2151.414(E). *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, ¶ 17. If a juvenile court determines, by clear and convincing evidence, that one or more of the factors listed in R.C. 2151.414(E) exist as to the child's parents, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." R.C. 2151.414(E). As relevant to this case, those factors include:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical

> dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *;
>
> * * *
>
> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]

R.C. 2151.414(E)(1), (2), and (4).

{¶ 16} Once the juvenile court decides that one of the criteria in R.C. 2151.414(B)(1) applies, the court turns to R.C. 2151.414(D) to decide if a grant of permanent custody is in the child's best interest. Pursuant to R.C. 2151.414(D)(1), in determining a child's best interest, the juvenile court "shall consider all relevant factors, including, but not limited to, the following:"

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a) through (e).

{¶ 17} By mother's sole assignment of error, she challenges the trial court's conclusion that it could not place A.R. with either parent within a reasonable time or should not place A.R. with either parent. Father's appellate brief also contains arguments that challenge the trial court's conclusion that it could not place A.R. with either parent in a reasonable time or should not place A.R. with either parent. Father's sole assignment of error, however, only challenges the trial court's best-interest determination, and not the determination of whether the court could or should place A.R. with either parent. Courts of appeal determine each appeal "on its merits on the assignments of error set forth in the briefs under App.R. 16." App.R. 12(A)(1)(b). Consequently, courts of appeal rule on assignments of error, not mere arguments. *McCarthy v. Johnson*, 10th Dist. No. 18AP-961, 2020-Ohio-3429, ¶ 9; *Saha v. Research Inst. at Nationwide Children's Hosp.*, 10th Dist. No. 18AP-661, 2019-Ohio-1792, ¶ 29. Because father has not assigned as error the trial court's conclusion that it could not or should not place A.R. with either parent, we will not address his arguments regarding that conclusion.

{¶ 18} With regard to whether A.R. could or should be placed with either parent, mother first argues that the manifest weight of the evidence does not support the trial court's finding that mother and father failed to substantially remedy the conditions that caused the court to temporarily place A.R. in FCCS' custody. We disagree.

{¶ 19} After reviewing the allegations contained in the complaint, which the parents did not contest, we determine that the trial court removed A.R. from her parents' custody for two reasons: her parents' failure to ensure A.R. attended school during the latter half of the 2017-2018 school year and her parents' reported illegal drug abuse. FCCS was able to confirm that mother abused illegal drugs when mother's March 16, 2018 drug screen was positive for cocaine, opiates, and marijuana, and when father admitted in April 2018 that mother abused crack cocaine.

{¶ 20} To ensure that A.R.'s parents refrained from illegal drug use, the case plan required mother and father to complete drug and alcohol assessments and follow all recommendations, as well as complete weekly drug screens. The FCCS caseworker discussed with both mother and father the importance of achieving these case plan objectives and offered mother and father assistance in achieving the objectives. The FCCS caseworker offered to provide father with free transportation to and from the drug testing

facility, but he never took advantage of this offer. Additionally, the FCCS caseworker referred mother to the Franklin County Family Recovery Court for assessment and treatment services. Although mother was accepted into the program, mother failed to engage in the assessment or treatment.

{¶ 21} Mother and father waited until the eleventh hour to take any action. Mother and father both testified that they completed the first phase of a drug and alcohol assessment only two days before the permanent custody hearing. Neither parent provided any records to corroborate the completion, however. Moreover, mother and father each completed only 1 drug screen in the 18 months between the filing of the complaint and the permanent custody hearing. Those drug screens occurred on the morning of the permanent custody hearing. Because mother and father delayed until the morning of the hearing to screen, the results of the drug screens were not known at the time of the hearing. Given parents' belated, unconfirmed, and insufficient efforts to fulfill the case plan objectives related to illegal drug use, we find the manifest weight of the evidence supports the trial court's conclusion that the parents failed to substantially remedy the conditions causing A.R. to be placed in FCCS' custody.

{¶ 22} Second, mother argues that the manifest weight of the evidence does not support the trial court's finding that mother's chemical dependency is so severe that she is unable to provide A.R. a permanent home at the present time or within one year of the permanent custody hearing. We disagree.

{¶ 23} During the permanent custody hearing, mother admitted that she is addicted to heroin. Mother, however, testified that she has attended counseling once a week with her "suboxone doctor" for seven months. (Jan. 23, 2020 Tr. at 141.) As of the date of the permanent custody hearing, mother claimed that she had not used illegal drugs for six months.

{¶ 24} The trial court did not find mother's testimony regarding her drug treatment credible, noting that mother should have been able to provide the FCCS caseworker with treatment records prior to trial, but she did not. On appeal, mother argues that the trial court erred in placing the burden on her to obtain and turn over to FCCS her treatment records. According to mother, once she signed a medical release, FCCS had the obligation to collect her medical records and ascertain her treatment.

{¶ 25} At the permanent custody hearing, the FCCS caseworker testified that mother gave her a copy of a suboxone prescription written for mother. The FCCS caseworker secured mother's signature on a medical release and faxed it to the office of the physician who prescribed the suboxone. However, neither the physician's office nor mother provided the FCCS caseworker with any of mother's treatment records.

{¶ 26} In weighing the evidence under the manifest weight standard, we leave the question of the witnesses' credibility primarily to the trial court to determine. *In re M.W.*, 10th Dist. No. 19AP-769, 2020-Ohio-5199, ¶ 42; *In re H.F.*, 10th Dist. No. 15AP-705, 2016-Ohio-580, ¶ 8. We defer to the trial court on this question because the trier of fact is in the best position to view witnesses and observe their demeanor, voice inflections, and gestures. *In re M.W.* at ¶ 42; *In re H.F.* at ¶ 8. Here, the FCCS caseworker attempted to obtain mother's treatment records, but she received nothing from mother's physician or mother. That meant that no treatment records corroborated mother's testimony. Without corroborating documentation, the trial court did not find mother's testimony regarding her drug treatment credible. We find the trial court did not err in looking to mother for documentation of her drug treatment, or in disbelieving mother's testimony when mother did not provide any such documentation.

{¶ 27} Mother also asserts that the trial court simply got it wrong: she actually provided treatment records; namely, she gave the FCCS caseworker a copy of a suboxone prescription. The prescription, however, does not substantiate that mother is actually participating in a treatment program or that mother has stopped abusing illegal drugs. Absent documentation corroborating those facts, we agree with the trial court that mother's testimony is not credible.

{¶ 28} The record evidence, therefore, establishes that mother struggles with an untreated addiction to heroin and, potentially, to other illegal drugs, which she has not addressed, even though she understands the importance of doing so. Given this evidence, we find that the manifest weight of the evidence supports the conclusion that mother's chemical dependency is so severe that she is unable to provide A.R. a permanent home at present time or within one year of the permanent custody hearing.

{¶ 29} Third, mother argues that the manifest weight of the evidence does not support the trial court's conclusion that the parents demonstrated a lack of commitment

toward A.R. by failing to regularly visit her and by showing an unwillingness to provide A.R. an adequate permanent home. We disagree.

{¶ 30} When A.R. initially entered FCCS' custody, mother and father regularly attended their weekly visits with A.R. However, beginning in June or July 2019, mother and father began missing visits or appearing late. Due to the parents' inconsistent attendance, the FCCS caseworker reduced parents' weekly visits to biweekly visits. The FCCS caseworker also asked A.R.'s parents to arrive an hour before the scheduled visit, to ensure that A.R. did not travel to the visitation site unnecessarily. A.R. suffered from carsickness, and the caseworker sought to spare A.R. the lengthy drive to and from the visitation site if her parents did not intend to attend the visit.

{¶ 31} Mother complained that the visits conflicted with her work schedule. The FCCS caseworker asked mother for proof that a scheduling conflict existed, but mother neither provided that proof nor showed the caseworker any documentation of her employment. Nevertheless, the FCCS caseworker altered the visitation time to accommodate the hours mother said she was working.

{¶ 32} Even after these modifications, the parents did not always appear for the scheduled visits with A.R. The trial court pointed out that father missed the same visits as mother, even though he was not working. The trial court found that, while it was conceivable that father's poor health prevented him from attending these visits, he never communicated that to the FCCS caseworker.

{¶ 33} On appeal, mother claims that she missed visits with her daughter because of work conflicts. The trial court found this testimony not credible, and we concur with this determination. As the trial court pointed out, mother never corroborated her employment with any documentation, such as a pay stub, W-2 form, or work schedule. Moreover, even if mother was employed, the FCCS caseworker changed the visitation time to accommodate mother's supposed work schedule. Mother, therefore, could not rely on work conflicts to excuse her nonattendance.

{¶ 34} Additionally, the trial court found that mother showed an unwillingness to provide A.R. an adequate permanent home by failing to address her drug addiction despite expressing an understanding of her obligation to do so. Mother argues that the trial court ignores that she entered into suboxone treatment and achieved six months of sobriety.

However, as we discussed above, the trial court found that testimony not credible, and we agree.

{¶ 35} In sum, the manifest weight of the evidence establishes that A.R.'s parents failed to regularly visit her and mother's failure to treat her drug addiction showed an unwillingness to provide A.R. an adequate permanent home. These actions demonstrated a lack of commitment toward A.R.

{¶ 36} In total, we have found the manifest weight of the evidence supports three of the R.C. 2151.414(E) factors. Accordingly, the trial court did not err in finding that the evidence demonstrated that it could not place A.R. with either parent within a reasonable time or should not place A.R. with either parent.

{¶ 37} We next turn to the trial court's determination that granting FCCS permanent custody of A.R. was in A.R.'s best interest. Both parents contend that the trial court erred in its discussion of the R.C. 2151.414(D)(1)(d) factor, which requires the court to consider A.R.'s need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to FCCS. While the parents agree that A.R. has a great need for a legally secure permanent placement, they argue that they can give her that legally secure permanent placement.

{¶ 38} Mother has a heroin addiction, which she failed to address through the case plan. Father also failed to follow the case plan objectives intended to ameliorate his suspected drug use. Additionally, father has significant medical issues. Father has liver cancer, and he is currently awaiting a liver transplant. He has had 28 surgeries to correct esophageal varices, which occur when veins in the chest swell with blood, and potentially burst, because blood flow to the liver is blocked. At one point, father was in a coma for seven days, and he had short-term memory loss upon awakening. When father testified during the permanent custody hearing, he estimated that he had spent two to three months of the prior year hospitalized.

{¶ 39} The trial court determined that returning A.R. to her parents would result in A.R. reverting to FCCS' custody because mother's unresolved drug addiction and father's medical problems would render A.R.'s parents unable to adequately care for her. Mother argues that the trial court is wrong: she could give A.R. a legally secure permanent placement if the trial court granted a six-month extension of FCCS' temporary custody.

Mother points out that FCCS never asked the trial court for a first or second six-month extension of temporary custody under R.C. 2151.415(D). She argues that six additional months would give FCCS more time to obtain her treatment records and verify her claim that she has been seeing a "suboxone doctor." She also contends that a six-month extension would allow her to demonstrate a full year of sobriety.

{¶ 40} Under R.C. 2151.415(D)(1), a trial court may grant the first six-month extension if it determines that "the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise placed within the period of extension." Here, the trial court found that, based on the parties' past behavior and an unconfirmed eleventh-hour effort on the case plan, it had no reasonable cause to believe reunification with A.R. could happen in a timely manner or be in A.R.'s best interest.

{¶ 41} Mother's argument hinges on this court accepting as credible her testimony that she is under the care of a "suboxone doctor" and has not used illegal drugs for six months. Without accepting mother's testimony as true, we have no basis on which to override the trial court's conclusion that reunification cannot timely occur given mother's drug addiction and insufficient effort on the case plan objectives.[1] As we explained above, the trial court did not find mother's testimony credible because mother could not corroborate it with treatment records. We agree. We thus find no error in the trial court's determination that mother cannot provide A.R. with a legally secure permanent placement.

{¶ 42} Father does not challenge the trial court's finding that his medical problems preclude him from being able to provide consistent care for A.R. Father merely argues that the trial court should not have awarded permanent custody to FCCS because A.R.'s foster home is not a potential adoptive home. However, R.C. 2151.414(D)(1)(d) does not require a children services agency "to present concrete proof that the child will be adopted if the court awards the agency permanent custody." *In re R.S.-G.*, 4th Dist. No. 15CA2, 2015-Ohio-4245, ¶ 52. Here, the trial court determined that neither parent nor any relative could provide A.R. with a legally secure permanent placement. As the FCCS caseworker testified, only a grant of permanent custody to FCCS, which would allow A.R. to be adopted, would

---

[1] We do not find the FCCS caseworker's testimony supportive of mother's argument. The caseworker testified that mother could possibly complete the case plan objectives in six months, but FCCS would prefer mother to demonstrate a longer period of stability given her history.

give A.R. an opportunity to achieve a legally secure permanent placement. Consequently, although FCCS has not yet identified an adoptive home for A.R., a grant of permanent custody to FCCS enables A.R. to obtain a legally secure permanent placement, which is in A.R.'s best interest.

{¶ 43} After considering the evidence relevant to the R.C. 2151.414(D)(1)(a) through (d) factors, we conclude that the manifest weight of the evidence supports the trial court's conclusion that an award of permanent custody to FCCS is in A.R.'s best interest. As the trial court found, A.R. knows and loves her parents, and she wants to return to her parents' custody. However, both mother and father are incapable of caring for her. The trial court, therefore, did not err in awarding permanent custody of A.R. to FCCS.

{¶ 44} For the foregoing reasons, we overrule mother's sole assignment and father's sole assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

DORRIAN, P.J., and MENTEL, J., concur.

———————————————