[Cite as *In re C.B.*, 2023-Ohio-4089.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:

CASE NO. 9-23-28

    C.B.,

[TIM B. - APPELLANT]                         **O P I N I O N**
[SABRINA M. - APPELLANT]

IN RE:

CASE NO. 9-23-29

    K.B.,

[TIM B. - APPELLANT]                         **O P I N I O N**
[SABRINA M. - APPELLANT]

**Appeals from Marion County Common Pleas Court**
**Family Court Division**
**Trial Court Nos. 21 AB 0116 and 21 AB 0117**

**Judgments Affirmed**

**Date of Decision:  November 13, 2023**

**APPEARANCES:**

    *W. Joseph Edwards* **for Appellant/Father**

    *Zebulon N. Wagner* **for Appellant/Mother**

    *Charles R. Hall, Jr.* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Mother-appellant, Sabrina M. ("Sabrina"), and father-appellant, Tim B. ("Tim"), appeal the April 24, 2023 decisions of the Marion County Court of Common Pleas, Family Court Division, granting permanent custody of their minor children, C.B. and K.B., to Marion County Children Services (the "agency"). For the reasons that follow, we affirm.

{¶2} C.B., born in 2015, and K.B., born in 2016, are the minor children of Sabrina and Tim. This case commenced in 2018 when the agency filed complaints in other cases involving C.B. and K.B. However, because those cases could not be adjudicated within the statutory time limits, the complaints were dismissed without prejudice and the agency filed new complaints in the trial court alleging C.B. and K.B. to be dependent children under R.C. 2151.04(C) on July 20, 2021. The trial court granted the agency emergency temporary custody of the children on July 30, 2021

{¶3} Following a hearing on September 3, 2021, the trial court concluded on September 21, 2021 that C.B. and K.B. were dependent children, that it was in the children's best interest to remain in the temporary custody of the agency, and that the agency "made reasonable efforts to finalize the permanency plan for and prevent the removal of the children from their home." (Case No. 21 AB 116, Doc. No. 21); (Case No. 21 AB 117, Doc. No. 19).

{¶4} The trial court appointed C.B. and K.B. a guardian ad litem ("GAL") on July 26, 2021, who filed reports throughout the development of the cases. Notably, in her March 27, 2023 report, the GAL recommended that the trial court grant permanent custody of the children to the agency because "the parents have not done the things required under the case plan"—namely, "they have not maintained suitable housing or maintained regular employment." (Case No. 21 AB 116, Doc. No. 60); (Case No. 21 AB 117, Doc. No. 55). Likewise, throughout the pendency of the cases, the trial court approved the agency's case plan and semi-annual administrative reviews, which were submitted to the trial court.

{¶5} On August 2, 2022, the agency filed motions for permanent custody of K.B. and C.B. under R.C. 2151.353 and 2151.414. After a permanent custody-hearing on April 3, 2023, the trial court granted permanent custody of C.B. and K.B. to the agency on April 24, 2023. (Case No. 21 AB 116, Doc. No. 64); (Case No. 21 AB 117, Doc. No. 64).

{¶6} Tim filed his notices of appeal on April 26, 2023, Sabrina filed her notices of appeal on May 23, 2023, and this court consolidated the cases. Sabrina raises three assignments of error, while Tim raises one assignment of error. For ease of our discussion, we will begin by addressing Sabrina's first and second assignments of error together along with Tim's assignment of error. Then, we will address Sabrina's third assignment of error.

**Mother's First Assignment of Error**

**The Trial Court's Decision Is Against The Manifest Weight Of The Evidence By Finding That Permanent Custody To The Agency Was In The Minor Childrens [sic] Best Interest Amounting To An Abuse Of Discretion.**

**Mother's Second Assignment of Error**

**The Trial Court's Decision Is Against The Manifest Weight Of The Evidence As The Appellant Demonstrated She Was Working To Complete The Agency's Case Plan Amounting To An Abuse Of Discretion.**

**Father's Assignment of Error**

**The Trial Court Erred In Finding By Clear And Convincing Evidence That It Is In The Best Interest Of The Children That Permanent Custody Be Awarded To MCCSB.**

{¶7} In their assignments of error, Sabrina and Tim argue that the trial court erred by granting permanent custody of C.B. and K.B. to the agency. Specifically, Sabrina and Tim argue that the trial court's decisions granting permanent custody of the children to the agency is against the manifest weight of the evidence because clear and convincing evidence does not support the trial court's best-interest findings.

*Standard of Review*

{¶8} The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972) and *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management

of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 6.

{¶9} When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. *See In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody: (1) the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) the trial court must find that permanent custody is in the best interest of the child. *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 10. *See also In re Brown*, 98 Ohio App.3d 337, 343 (3d Dist.1994). R.C. 2151.414(B)(1) provides, in relevant part, that a trial court

> may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> * * *

(d) [T]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

R.C. 2151.414(B)(1)(d). *See also In re A.W.*, 9th Dist. Lorain No. 17CA011123, 2017-Ohio-7786, ¶ 17 (noting "that the five factors listed in R.C. 2151.414(B)(1)(a)-(e) are alternative findings, and that the agency need only prove one in order to satisfy the first prong of the permanent custody test").

{¶10} "If the trial court determines that *any* provision enumerated in R.C. 2151.414(B)(1) applies, the trial court must determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest." (Emphasis sic.) *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 55.

{¶11} "In determining the best interest of a child, a juvenile court 'may apply one of two different tests.'" *In re S.C.*, 10th Dist. Franklin No. 21AP-203, 2022-Ohio-356, ¶ 38, quoting *In re J.P.*, 10th Dist. No. 18AP-834, 2019-Ohio-1619, ¶ 39. "'Under R.C. 2151.414(D)(1), the juvenile court weighs multiple factors * * * to decide whether granting an agency permanent custody of a child is in that child's best interest.'" *Id.*, quoting *In re J.P.* at ¶ 39. "By contrast, 'under R.C. 2151.414(D)(2), if the juvenile court makes [each of] the four enumerated findings, permanent custody is per se in the child's best interest and the court "shall" commit

the child to the permanent custody of the agency.'" *Id.*, quoting *In re J.P.* at ¶ 39.

"These two provisions 'are *alternative* means for reaching the best-interest determination,' and '[w]here a juvenile court employs the R.C. 2151.414(D)(1) [multiple factor weighing] method of determining the child's best interest, the court need not also conduct the R.C. 2151.414(D)(2) [four-requisite prong] analysis.'" (Emphasis added.) *Id.*, quoting *In re J.P.* at ¶ 40.

{¶12} In determining whether granting the agency permanent custody is in the best interest of the child, R.C. 2151.414(D)(1) provides:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

**{¶13}** If the trial court makes these statutorily required determinations, a reviewing court will not reverse a trial court's decision unless it is not supported by clear and convincing evidence. *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 43, citing *In re Meyer*, 98 Ohio App.3d 189, 195 (3d Dist.1994), citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985) and *In re Adoption of Lay*, 25 Ohio St.3d 41, 42 (1986). *See also In re A.E.*, 3d Dist. Seneca Nos. 13-14-14 and 13-14-15, 2014-Ohio-4540, ¶ 28 ("A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established."). "Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re S.G.*, 2015-Ohio-2306, at ¶ 10, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

**{¶14}** Here, the trial court granted permanent custody of C.B. and K.B. to the agency after concluding that such a disposition is warranted under R.C. 2151.414(B)(1)(d)—that is, the trial court found that that C.B. and K.B. have been in the agency's temporary custody "in excess of [12] months of a consecutive [22-]month period." (Case No. 21 AB 116, Doc. No. 64); (Case No. 21 AB 117, Doc.

No. 64). Consequently, the trial court's finding regarding the first prong of the permanent-custody test—which is unchallenged by Sabrina and Tim—is satisfied in both of these cases. *See id.*; *In re S.G.* at ¶ 11.

**{¶15}** Having resolved that the trial court satisfied the first prong of the permanent-custody test in these cases, we next address the trial court's best-interest determination under R.C. 2151.414(D)(1). Here, Sabrina and Tim argue that the trial court's decision to sever parental rights is against the manifest weight of the evidence because the record does not reflect competent, credible evidence by which the trial court could conclude that granting permanent custody of C.B. and K.B. to the agency is in the children's best interest. However, our review of the record reveals competent, credible evidence supporting the trial court's factual findings relevant to the best-interest factors set forth in R.C. 2151.414(D).

**{¶16}** Regarding the best-interest factor under R.C. 2151.414(D)(1)(a), the trial court considered C.B.'s and A.B.'s relationship with their parents and found that the children care for their parents. *Compare In re M.W.*, 10th Dist. Franklin No. 19AP-769, 2020-Ohio-5199, ¶ 24 (noting that "the court recognized the significant relationship between mother and M.W."). Likewise, the record reveals that Sabrina and Tim consistently visited the children. "However, while a bond and relationship of the children to the parents is a factor, it is not controlling." *In re T.N.*, 10th Dist. Franklin No. 21AP-429, 2022-Ohio-2784, ¶ 54. That is, the "'resolution of [R.C. 2151.414(D)(1)(a)] is not limited to merely the bond between

child and parent.'" *In re B.B.*, 10th Dist. Franklin No. 20AP-488, 2021-Ohio-2299, ¶ 60, quoting *In re K.R.*, 10th Dist. Franklin No. 18AP-633, 2019-Ohio-2192, ¶ 81.

{¶17} Relevant to R.C. 2151.414(D)(1)(a), the record reflects that the children have developmental delays and that C.B. is autistic. Regarding those issues, the trial court found that C.B. and K.B. are "doing well in the care of their foster parents, but the foster parents are unwilling to adopt the children because they are unsure they can deal with [C.B.'s] disabilities." (Case No. 21 AB 116, Doc. No. 64); (Case No. 21 AB 117, Doc. No. 64). Nevertheless, the trial court found that C.B. "is progressing in all areas" since he is receiving "physical therapy, occupational therapy, and speech therapy." (*Id.*); (*Id.*). Significantly, the record reflects that C.B.'s disability requires that he receive medical care but that his medical appointments had "been missed multiple times" when C.B. was in the care of Sabrina and Tim. Likewise, the GAL testified that C.B.'s "needs are severe enough so that the parents would have a great deal of difficulty meeting them." (Apr. 3, 2023 Tr. at 153).

{¶18} Moreover, contrary to Sabrina's contention that the trial court's finding that the children "were bonded with their foster placement" "is of little importance," that finding is indicative of the children's ability to bond with other caregivers. (Mother's Brief at 8).

{¶19} As to R.C. 2151.414(D)(1)(b)—C.B.'s and K.B.'s wishes—the trial court found that, even though C.B. "is seven years old" and K.B. "is five years old,"

C.B. is autistic and the children were only "recently potty trained." (Case No. 21 AB 116, Doc. No. 64); (Case No. 21 AB 117, Doc. No. 64). Consequently, while the record does not reflect C.B.'s or K.B.'s wishes, the trial court found that "the children seemed happy to see the parents." (*Id.*); (*Id.*).

{¶20} Nevertheless, the children's wishes, alone, do not require a trial court to deny an agency's motion for permanent custody. *In re K.M.*, 3d Dist. Crawford No. 3-18-11, 2018-Ohio-3711, ¶ 27, citing *In re S.M.*, 4th Dist. Highland No. 14CA4, 2014-Ohio-2961, ¶ 36. Rather, the children's wishes are "'a factor for the trial court to weigh along with others outlined in R.C. 2151.414(D)(1).'" *Id.*, quoting *In re S.M.* at ¶ 36, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 57. *See also In re M.W.*, 2020-Ohio-5199, at ¶ 26 (concluding that a trial court cannot give a child's "wishes under the R.C. 2151.414(D)(1)(b) factor greater weight than the other best interest factors").

{¶21} Even though the trial court appears to have weighed this factor in favor of Sabrina and Tim, Sabrina argues that the trial court best-interest determination is against the manifest weight of the evidence because the trial court "did not have the appropriate information to make [the] determination" regarding the children's wishes. (Mother's Brief at 9). However, notwithstanding the trial court's finding concerning the children's wishes, the record reflects that the GAL recommended granting permanent custody of C.B. and K.B. to the agency.

**{¶22}** Concerning R.C. 2151.414(D)(1)(c)—C.B.'s and K.B.'s custodial history—the trial court found that C.B. and K.B. "have been in the custody of [the agency] for more than twelve months of a consecutive twenty-two month period"— namely, the children "have been in [the agency's] custody for approximately [44] months." (Case No. 21 AB 116, Doc. No. 64); (Case No. 21 AB 117, Doc. No. 64).

**{¶23}** Based on our review of the record, the trial court's conclusion that C.B.'s and K.B.'s custodial history weighs in favor of granting the agency's motion for permanent custody is supported by competent, credible evidence. Importantly, "R.C. 2151.414(D)(1)(c) permits a court to review the broader custodial history of the child." *In re M.W.*, 2020-Ohio-5199, at ¶ 30, citing *In re S.H.*, 12th Dist. Butler No. CA2020-02-023, 2020-Ohio-3499, ¶ 33 (noting the "plain language of R.C. 2151.414(D)(1)(c) instructs the court to consider, generally, the custodial history of the child") and *In re Ca.T.*, 8th Dist. Cuyahoga No. 108969, 2020-Ohio-579, ¶ 35. "While the trial court may consider additional facts beyond the 12-out-of-22 circumstance in its analysis under R.C. 2151.414(D)(1)(c), the court is under no obligation to do so." *Id.*, citing *In re T.M.*, 10th Dist. Franklin No. 18AP-943, 2020-Ohio-815, ¶ 19 (rejecting the contention that a trial court must take other facts beyond the 12-out-of-22 finding into consideration when considering custodial history under R.C. 2151.414(D)(1)(c)).

**{¶24}** Significantly, prior to this case, C.B. and K.B. "were initially removed from their parents' care in late 2018," but "were returned to the parents when

conditions in the home improved." (Case No. 21 AB 116, Doc. No. 64); (Case No. 21 AB 117, Doc. No. 64). However, "[t]he children were removed again in about August of 2019 because conditions in the parent's [sic] home had deteriorated" and they "have remained in the custody of [the agency] continuously since." (*Id.*); (*Id.*).

**{¶25}** As to R.C. 2151.414(D)(1)(d)—C.B.'s and K.B.'s need for a legally secure permanent placement and whether that type of placement could be achieved without a grant of permanent custody to the agency—there is competent, credible evidence in the record supporting the trial court's finding that granting permanent custody to the agency is the only effective means of providing C.B. and K.B. with a legally secure permanent placement. Critically, the record reveals that Sabrina and Tim were unable to resolve the issues that led to the removal of the children from their home—namely, the issues related to providing suitable housing.

**{¶26}** Here, Tim challenges the trial court's finding under R.C. 2151.414(D)(1)(d) and asserts that this factor does not weigh in favor of granting permanent custody of C.B. and K.B. to the agency because there is a low probability of the children being adopted. Similarly, Sabrina argues that, since C.B. and K.B.'s current foster family is not interested in adopting them, the trial "court improperly determined that displacing the Minor Children into a fourth foster home is in their best interest over being returned to [her]." (*Id.* at 12-13).

**{¶27}** However, "the permanent custody statutes do not require [an agency] to prove that adoption is likely." *In re C.W.*, 10th Dist. Franklin No. 19AP-309,

2020-Ohio-1248, ¶ 76. Indeed, "R.C. 2151.414(D)(1)(d) does not require a children services agency 'to present concrete proof that the child will be adopted if the court awards the agency permanent custody.'" *In re A.R.*, 10th Dist. Franklin No. 20AP-201, 2021-Ohio-1794, ¶ 42, quoting *In re R.S.-G.*, 4th Dist. Athens No. 15CA2, 2015-Ohio-4245, ¶ 52. Specifically, the Supreme Court of Ohio recognized that, "while a juvenile court reviewing a motion for permanent custody was at one time required to consider the child's probability of being adopted, * * * the current statutory framework does not expressly require the court to consider this information in making a best-interest determination." *In re T.R.*, 120 Ohio St.3d 136, 2008-Ohio-5219, ¶ 14. Therefore, even though "'[i]t is true that the likelihood that a child will be adopted may be considered in determining the child's best interest," "the statutes contemplate that all the statutory best interest factors must be considered and, although the likelihood of adoptions weighs in favor of such an award, the absence of the likelihood does not preclude the court from finding that an award of permanent custody is in the child's best interest'" *In re A.R.* at ¶ 42, quoting *In re V.B.-S.*, 10th Dist. Franklin No. 13AP-478, 2013-Ohio-5448, ¶ 51. Consequently, Tim's argument is without merit.

{¶28} We likewise reject Sabrina's argument that "[t]he trial court failed to consider that the children would be placed into a 4th foster home with a new family they do not know, nor bonded to, when considering the best interest of the children." (Mother's Brief at 12). Contrary to Sabrina's contention, the trial court considered

C.B. and K.B.'s chronic foster-placement disruption in its best-interest analysis. Specifically, the trial court found that "the children's former foster-home placement disrupted in August of 2022, and the children were placed in another foster home" and that "the current foster placement will also be disrupted as the current foster parents are unwilling to adopt the children because they are concerned about dealing with [C.B.'s] autism." (Case No. 21 AB 116, Doc. No. 64); (Case No. 21 AB 117, Doc. No. 64). Thus, Sabrina's argument is misplaced. Indeed, since the trial court did not weigh C.B. and K.B.'s chronic foster-placement disruption the way in which Sabrina would have preferred, such does not suggest that the trial court's decision granting permanent custody of C.B. and K.B. to the agency is against the manifest weight of the evidence.

{¶29} Nevertheless, Sabrina maintains that the R.C. 2151.414(D)(1)(d) factor does not weigh in favor of granting the agency's motions for permanent custody because the trial "court failed to take into consideration [her] efforts to secure a permanent placement for [C.B. and K.B.]" as well as her "progress within the case plan set by the Agency." (Mother's Brief at 11, 15). Tim alleges that this factor does not weigh in favor of granting the agency's motion for permanent custody for similar reasons. Specifically, Tim argues that the trial court failed to consider that "[t]hey are in the process of moving into a new home" as evidence that they "have shown they are willing to make the effort to get their children back in their home despite the setbacks they have faced." (Father's Brief at 8).

**{¶30}** However, "it is generally accepted that a trial court is not limited to considering only current compliance with case plan objectives or objectives related to housing and income in its analysis of the child's need for a legally secure permanent placement." *In re W.J.*, 3d Dist. Logan No. 8-21-29, 2022-Ohio-2449, ¶ 72. "Rather, the determination of the best interest of a child and the decision to terminate parental rights are both governed by statute, and the proper focus of a challenge to those findings is through an analysis of the relevant statutory factors in R.C. Chapter 2151." *In re R.L.*, 9th Dist. Summit No. 27214, 2014-Ohio-3117, ¶ 34. Here, the record reflects that—despite Sabrina's contention that she complied with many of the case-plan objectives—Sabrina and Tim did not remedy the primary reason that the children were removed from their home. *See id.* That is, it is undisputed that Sabrina and Tim did not remedy the unsuitable conditions of the home.

**{¶31}** Nevertheless, "'[a] legally secure permanent placement is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs.'" *In re K.M.*, 2018-Ohio-3711, at ¶ 29, quoting *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016-Ohio-793, ¶ 56. Importantly, notwithstanding Sabrina's and Tim's arguments to the contrary, the record demonstrates that Sabrina and Tim are not able to provide C.B. and K.B. a legally secure permanent placement due to the deplorable housing they have chosen to provide to these children.

**{¶32}** Moreover, the trial court found that "Sabrina and Tim have had more than three and one-half years since the children were last removed from their care to provide appropriate housing. They have failed to do so. Meanwhile, the children have spent more than half of their lives in foster care. They deserve permanency." (Case No. 21 AB 116, Doc. No. 64); (Case No. 21 AB 117, Doc. No. 64). In addition to the objective for Sabrina and Tim to provide C.B. and K.B. with appropriate housing, the trial court addressed Sabrina and Tim's financial situation underpinning their inability to provide C.B. and K.B. with a legally secure permanent placement. In particular, the trial court found that even though "Sabrina is employed at Bob Evans in Marion," her expenses exceed her income, and the trial court found that "Tim has not worked for two years, although he acknowledged he could have been working." (*Id.*); (*Id.*). Further, the trial court found that "Tim lacks insight into the necessity of working to provide appropriate housing for his family." (*Id.*); (*Id.*).

**{¶33}** There is competent, credible evidence in the record supporting the trial court's findings. In particular, the GAL testified that "these kids need permanency. They need to be placed in an environment where they have parents who are able to take care of their needs." (Apr. 3, 2023 Tr. at 153). Specifically, the GAL stressed that "[e]ven if the parents do manage to obtain suitable housing * * * , there is no guarantee that they will be able to maintain that housing" because "[i]t does not appear from the parents [sic] past behavior and the current situation that the parents

will be able to adequately care for the children" since "[t]heir financial situation remains precarious and they have not managed to secure appropriate housing over the last three years while the case has been pending." (Case No. 21 AB 116, Doc. No. 61); (Case No. 21 AB 117, Doc. No. 55).

**{¶34}** Likewise, Mackenzie Magill ("Magill"), the agency's caseworker assigned to C.B.'s and K.B.'s cases, testified that "given the significant longevity of this case and the ample amount of time that [the parents have] had to correct the safety concerns in the home, they haven't demonstrated that they can do that yet." (Apr. 3, 2023 Tr. at 126). She further testified that she does not "know that they will be able to do that." (*Id.*).

**{¶35}** Thus, contrary to Sabrina's and Tim's contention that the trial court did not consider their "upcoming move when examining the need for a legally secure placement," the evidence in the record reveals that the agency provided Sabrina and Tim an extraordinary amount of time to remedy the issues identified in the case plan as the reason for the children's removal but they were unable to do so. Consequently, the trial court's conclusion that C.B. and K.B. are in need of a legally secure permanent placement and that type of placement cannot be achieved without granting the agency's motions for permanent custody is not against the manifest weight of the evidence.

**{¶36}** With respect to R.C. 2151.414(D)(1)(e)—whether any of the factors in R.C. 2151.414(E)(7)-(11) apply—the trial court concluded that "[n]one of the

factors apply to the instant cases." (Case No. 21 AB 116, Doc. No. 64); (Case No. 21 AB 117, Doc. No. 64).

**{¶37}** Finally, Tim suggests that "[t]he standard of clear and convincing evidence is too high for this case" since Sabrina and Tim "have shown they can provide a proper home for their children, but they need another chance and more time." (Father's Brief at 9). Even so, "a trial court can award permanent custody to the state even in the absence of clear and convincing evidence as to one of the R.C. 2151.414(D)(1) factors." *In re K.M.*, 2018-Ohio-3711, at ¶ 37, citing *In re H.M.*, 3d Dist. Logan Nos. 8-13-11, 8-13-12, and 8-13-13, 2014-Ohio-755, ¶ 28 ("A trial court can determine that granting permanent custody to the state is in the child's best interest, even with a lack of clear and convincing evidence in a single factor."). However, based on the totality of the evidence, we conclude that the trial court's determination that it is in C.B.'s and K.B.'s best interest to grant the agency's motion for permanent custody is supported by clear and convincing evidence. Therefore, we conclude that the trial court's decision to grant permanent custody of C.B. and K.B. to the agency is not against the manifest weight of the evidence. Consequently, the trial court did not err by granting the agency's motions for permanent custody.

**{¶38}** For these reasons, Sabrina's first and second assignments of error and Tim's assignment of error are overruled.

**Mother's Third Assignment of Error**

**The Trial Court's Decision Is Against the Manifest Weight of the Evidence In Finding That The Marion County Child Services Used Reasonable Efforts To Eliminate The Continued Removal Of The Children Or To Make It Possible For The Children To Return Home Amounting To An Abuse Of Discretion.**

{¶39} In her third assignment of error, Sabrina argues that the trial court erred by granting permanent custody of C.B. and K.B. to the agency because the agency failed to make reasonable efforts toward reunification. Specifically, Sabrina contends that the record reveals that the agency failed to make reasonable efforts toward reunification because those efforts were not appropriate or reasonable for her situation.

*Standard of Review*

{¶40} "We review under an abuse-of-discretion standard a trial court's finding that an agency made reasonable efforts toward reunification." *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 24. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶41} "'Reasonable efforts' has been defined as the state's efforts, after intervening to protect a child's health or safety, to resolve the threat to the child before removing the child from the home or to return the child to the home after the

threat is removed." *In re I.H.*, 6th Dist. Lucas No. L-20-1062, 2020-Ohio-4853, ¶ 23, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, at ¶ 28. However,

> [n]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit.

*In re C.F.* at ¶ 29. In particular, under R.C. 2151.419, when a trial court

> removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

R.C. 2151.419(A)(1). The Supreme Court of Ohio

> determined that the trial court is not obligated, under R.C. 2151.419, to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing *unless* the agency has not established that reasonable efforts have been made prior to the hearing.

(Emphasis sic.) *In re N.R.S.*, 3d Dist. Crawford Nos. 3-17-07, 3-17-08, and 3-17-09, 2018-Ohio-125, ¶ 25, citing *In re C.F.* at ¶ 41, 43 (concluding that the reasonable-efforts determination under R.C. 2151.419 does not apply to permanent-custody motions under R.C. 2151.413 or to hearings on such motions under R.C. 2151.414).

> According to the Ohio Supreme Court, the trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state."

*In re B.S.*, 3d Dist. Allen No. 1-15-44, 2015-Ohio-4805, ¶ 36, quoting *In re C.F.* at ¶ 41.

**{¶42}** In these cases, the trial court made its reasonable-efforts finding under R.C. 2151.419 in its September 21, 2021 dispositional entries adjudicating C.B. and K.B. as dependent children and ordering that they remain in the temporary custody of the agency. *Accord In re W.J.*, 2022-Ohio-2449, at ¶ 87. "Consequently, the trial court was not required to make any further reasonable-efforts findings." *Id.* "'Stated another way, because the trial court previously made the requisite R.C. 2151.419 "reasonable efforts" findings, it was not required to again make that finding at the hearing on the agency's motion[s] for permanent custody filed under R.C. 2151.413.'" *Id.*, quoting *In re B.J.P.*, 3d Dist. Wyandot No. 16-18-04, 2018-Ohio-5221, ¶ 18.

**{¶43}** Notwithstanding the trial court's conclusion that the agency exhibited reasonable efforts to eliminate the continued removal of C.B. and K.B. from their home, Sabrina contends that the trial court "never actually stated what those reasonable efforts were" as it was required to do under R.C. 2151.419(A)(1). Sabrina's argument is specious. Rather, the trial court extensively documented the

reasonable efforts employed by the agency to eliminate the continued removal of C.B. and K.B. from their home. Specifically, the trial court described that the agency "offered to provide a dumpster to the parents to remediate the problematic conditions in the home, and offered bug bombs and professional exterminating services to eliminate the pest infestation issues if the parents would first remove the clutter from the home" but they "failed to do so." (Case No. 21 AB 116, Doc. No. 64); (Case No. 21 AB 117, Doc. No. 64). Imperatively, the trial court found that Sabrina and Tim "had over three and one-half years to resolve the issues that precipitated the removal [in the prior case], and twenty months since the opening of the current cases" but that they "have not cooperated with [the agency] as demonstrated by their unwillingness to provide access to their home during the period from September, 2022 through the end of March, 2023." (*Id.*); (*Id.*). In sum, the trial court resolved that Sabrina and Tim "did not take advantage of [the agency's] reasonable efforts." (*Id.*); (*Id.*).

{¶44} Nevertheless, Sabrina maintains that the trial court abused its discretion by concluding that the agency made reasonable efforts toward reunification because those "efforts were not appropriate or reasonable for Sabrina's situation." (Mother's Brief at 19). Specifically, Sabrina posits that "[o]ther than a list of resources for housing, the Agency did not provide [her] with appropriate and reasonable efforts to secure a safe and habitable home for the Minor Children's return." (*Id.* at 20). We are not persuaded by Sabrina's argument. Rather, our

review of the record reveals that the agency's reunification efforts were reasonable and diligent under the circumstances.

{¶45} Indeed, "'"[c]ase plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated."'" *In re A.M.*, 2015-Ohio-2740, at ¶ 25, quoting *In re T.S.*, 3d Dist. Mercer Nos. 10-14-13, 10-14-14, and 10-14-15, 2015-Ohio-1184, ¶ 26, quoting *In re Evans*, 3d Dist. Allen No. 1-01-75, 2001 WL 1333979, *3 (Oct. 30, 2001). "'To that end, case plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification.'" *Id.*, quoting *In re T.S.* at ¶ 27, citing *In re Evans* at *3. "'Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan.'" *Id.*, quoting *In re T.S.* at ¶ 27, citing *In re Evans* at *3. "'"Nevertheless, the issue is not whether there was anything more that [the agency] could have done, but whether the [agency's] case planning and efforts were reasonable and diligent under the circumstances of this case."'" *Id.*, quoting *In re T.S.* at ¶ 27, quoting *In re Leveck*, 2003-Ohio-1269, at ¶ 10. "'"Reasonable efforts" does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible.'" *In re H.M.K.*, 2013-Ohio-4317, at ¶ 95, quoting *In re M.A.P.*, 12th Dist. Butler Nos. CA2012-08-164 and CA2012-08-165, 2013-Ohio-655, ¶ 47. "'We also note that the statute provides that in determining whether reasonable efforts were made, the child's health and

safety is paramount.'" *In re A.M.* at ¶ 25, quoting *In re T.S.* at ¶ 27, citing R.C. 2151.419(A)(1).

{¶46} In these cases, the record reflects that the trial court's reasonable-efforts findings are supported by clear and convincing evidence. Importantly, the record reflects that the agency attempted to assist Sabrina and Tim; however, the record further reveals that they declined to heed any such assistance. Indeed, Cecily Nelson ("Nelson"), a prior caseworker assigned to C.B.'s and K.B.'s cases, testified that Sabrina and Tim did *not* make "significant progress towards getting their kids back" even though they "were significantly utilizing their available parenting time." (Apr. 3, 2023 Tr. at 71). According to Nelson, Sabrina and Tim "were not compliant with" "meeting with [her]" and they did not complete the case-plan objective concerning the condition of their home. (*Id.*). Likewise, Magill testified to the difficulty she experienced making contact with Sabrina and Tim. In particular, Magill testified she was "able to see Sabrina twice" from April 2022 through April 2023. (*Id.* at 115).

{¶47} Nelson testified that they identified that Sabrina and Tim's debt was impeding their ability to obtain alternative housing. As a result, Nelson testified that the agency worked with Sabrina and Tim to learn to manage and mitigate their debt by "com[ing] up with a plan for putting money towards their debt" but that "there was never anything specific they were willing to commit to." (*Id.*). She further testified that the agency "offer[ed] to purchase things like a dumpster for the

home so that they could help get rid of some of the items in the house" but that Sabrina and Tim rejected that offer because they had "already purged all of the things they were willing to get rid of * * * ." (*Id.* at 74). Nelson testified that the agency also offered to provide extermination services but Sabrina and Tim refused to "pick up some of the boxes or rearrange" them for the services to be effective. (*Id.* at 75).

{¶48} Magill testified that simply cleaning the home for Sabrina and Tim is not a realistic resolution to the problem since "they need to be able to show an ability to maintain it." (*Id.* at 118). Imperatively, demonstrating the ability to *maintain* adequate housing is critical in this case since C.B. and K.B. were returned to Sabrina and Tim's care only to be removed shortly thereafter since "the conditions [of the home] had returned to a deplorable state and [since] the children were living in unhealth [sic] and unsanitary conditions again." (Case No. 21 AB 116, Doc. No. 38); (Case No. 21 AB 117, Doc. No. 34). Specifically, the record reflects that "Sabrina and Timothy did not make contact with the agency for several months following the children's return despite being told the case would remain open" and "the agency had to contact Law Enforcement in order to get access to the home and ensure Sabrina and Timothy answered the door." (*Id.*); (*Id.*).

{¶49} As a result, based on the record before us, we conclude that Sabrina has not demonstrated that the trial court abused its discretion by determining that

-26-

the agency made reasonable efforts toward reunification. *Accord In re B.S.*, 2015-Ohio-4805, at ¶ 40.

{¶50} Therefore, Sabrina's third assignment of error is overruled.

{¶51} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**MILLER, P.J. and WILLAMOWSKI, J., concur.**

**/hls**